## LULA JOHNSON V. THE STATE.

No. 2836.    Decided November 18, 1903.

**Evidence—Corpus Delicti—Principal.**

See evidence recited in the opinion of the court which is held to establish that the dead body, or portions of the dead body, found in a creek was the body, or portions of the body, of the child alleged to have been killed by defendant, and that the accused was present and participated in the homicide, if she did not in fact commit it in person.

Appeal from the District Court of Leon. Tried below before Hon. J. M. Smither.

Appeal from a conviction of murder in the first degree; penalty, imprisonment for life in the penitentiary.

The opinion states the case.

No brief on file for appellant.

*Howard Martin,* Assistant Attorney-General, for the State.

BROOKS, JUDGE.—Appellant was convicted for the murder of her child, Essie Rigsby, and her punishment assessed at confinement in the penitentiary for life.

The first ground of the motion for new trial is, that the evidence fails to clearly establish that the dead body or portions of the dead body found in Kechi Creek was the body or portions of the body of Essie Rigsby, alias Essie Johnson, the person alleged to have been killed by defendant. The evidence as contained in the statement of facts is substantially as follows: The justice of the peace testified that he found the remains of a child that looked like a negro, about a year and a half or two years old, in the creek; witness saw parts of the skull, and the legs and arms. The skin of the child was a yellow color, as if bleached by lying in the water; he could not tell its sex.

Mat Brown testified that sometime in June, 1899, and prior to the finding of a child in Kechi Creek, in Leon County, defendant came to her house carrying in her arms her baby, named Essie Rigsby. Defendant reached witness' house about 10 o'clock in the morning. The baby was about two years old; it had a hat on its head. Defendant did not remain at witness' house but a few minutes, and then left, carrying the baby in her arms, going in the direction of said creek, where witness afterwards saw the remains of a dead child. Defendant was gone from the house about an hour or an hour and a half when she again came to witness' house, but defendant did not then have her baby. Witness asked her what she had done with her baby, and she replied she had given it to its father, Tom Rigsby. Witness noticed that defendant had the hat the baby had on when she first came to her house. It was about a mile from witness' house to the creek, where the baby was found. It was the next week after defendant was at witness' house that the dead child was found. Witness had not seen the child since defendant was at her house. Defendant's child was a black child. Witness could tell the sex of the baby found. Have never seen deceased since the day her mother had her at witness' house, unless that was her baby in the creek; don't know that defendant drowned the child.

Eliza Butler testified that she saw defendant on Kechi Creek on the day her child was afterwards found in the creek. Saw no one with defendant. She had something in her hand; never noticed what it was. Witness was working that day in the field near the creek and walked down to the creek to get a drink of water. Knew defendant's child, but have not seen it since the remains of the child were found in the creek.

Charley Dixon testified that "after it was reported in the neighborhood defendant's child was missing, defendant came in the field where her mother, Fannie Johnson, and I were working, and spoke to us and said, 'I hear you are all trying to send me to the penitentiary about my child.' I said, 'No, Lula, we are not trying to send you anywhere, but your child is said to be missing, and the people suspect you destroyed it.' She (defendant) said she had not destroyed her child, that she had given it to it's father, Tom Rigsby. I then told her to go at once and get her child and prove that she was innocent. Soon after this

defendant was arrested, and the remains of a colored child were found in Kechi Creek. I went to the creek and pulled the child out. It had a piece of plow tied around its neck, and was in water about six inches deep. The child was considerably decomposed, but some of its skin was still on its bone. It was a black child, and the water had turned the skin a lighter color. After defendant was arrested, I assisted in making her bond, and after the same was made she lived with me awhile, about a year; and defendant told me that Anderson Donaldson killed her child, Essie Rigsby. Defendant said she was walking down the banks of Kechi Creek, and that Anderson Donaldson was riding on horseback, just a few feet behind her, carrying her baby, Essie Rigsby, in his arms; that she looked back and saw that Donaldson had pulled off the baby's clothes. That suddenly she heard something hit the water, and she turned around and looked and saw that Anderson Donaldson had thrown her child in the creek. She then began screaming, and Donaldson told her to hush, or she might go the same way, and that if she said anything about it, he (Donaldson) would kill her. I tried to talk to her several times about it after this; but every time she would go to crying. She said when she saw Donaldson had pulled her baby's clothes off she asked what he did it for, and he cursed her and told her to go on ahead. She also said that Donaldson told her to go to Mat Brown's, and he would meet her there; that they came from Thompson's hill up the Guy's store road together, and that Donaldson went on the Guy's store road towards the Hopkins place, and she went on to Mat Brown's. The day the child was supposed to be drowned, I saw Anderson Donaldson riding Frank Hopkins' horse, with a blind bridle, about 1 or 2 o'clock in the day; he was riding in the direction of the creek where the remains were found."

Fannie Johnson, defendant's mother, testified that defendant had a child named Essie Rigsby. She seemed to be an affectionate mother. "I asked Lula (defendant) about her child after it was drowned, and she said she had sent it to its father. The child was about two years old, and a girl." Tom Rigsby testified that he was the father of the child said to have been drowned. "Defendant never at any time gave me the child. Have not seen Essie Rigsby since she is said to have been drowned. At that the time she was about a year and seven months old." This is substantially all the evidence adduced on the trial.

We think the evidence is sufficient, under Kugadt v. State, 38 Texas Crim. Rep., 681.

Appellant's second insistence is that the court erred in failing to charge the law of accomplice; and further erred in failing to charge the jury that, if they believed the dead body, or portions of the body, found in Kechi Creek was the body or portions of the dead body of Essie Rigsby, alias Johnson; and if they further believed that said Essie Rigsby, alias Johnson, was in fact killed by Anderson Donaldson, and that defendant herein was an accomplice in the commission of said offense, then, in

that event, defendant could not be convicted under the indictment herein charging her as the principal offender, and should be acquitted. Neither of these issues was raised by the evidence. The evidence shows defendant was present and participatd in the crime, if she did not in fact commit it in person. By all the known rules of law, this would constitute appellant a principal.

The third ground of the motion is, that the court failed to charge the jury on the law of principals under the facts of this case. In this there was no error.

No error is made to appear by this record, and the judgment is accordingly affirmed.

*Affirmed.*